UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| WhosHere, Inc.,<br><br>   Plaintiff,<br><br> v.<br><br>Gökhan Örün d/b/a WhoNear d/b/a Who Near d/b/a whonear.me,<br><br>   Defendant. | Case No. 1:13-cv-00526-AJT-TRJ |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF WHOSHERE, INC.'S MOTION FOR PERMISSION TO SERVE
THE DEFENDANT LOCATED IN TURKEY THROUGH ALTERNATIVE
MEANS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(f)(3)**

Plaintiff WhosHere, Inc. ("WhosHere") respectfully requests that the Court, pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure ("Rule 4(f)(3)"), authorize Plaintiff to serve Defendant Gökhan Örün ("Defendant" or "Mr. Örün") through alternative means, including email and social networking sites.

## BACKGROUND

On April 30, 2013, WhosHere filed its Complaint against Defendant for trademark infringement, unfair competition, and cybersquatting. (Dkt. No. 1). WhosHere then endeavored to engage in good faith settlement discussions with Defendant in the hopes of resolving this dispute without further litigation, including making multiple attempts at communications with Mr. Örün. (Declaration of Jacob S. Wharton ("Wharton Decl.") ¶ 3, Dkt. No. 9-2). Plaintiff addressed these communications to Mr. Örün via email at gokhan@whonear.me. (Ex. 1). Mr. Örün responded and provided his contact information, including a second email address, gokanorun@gmail.com. (*Id.*). To ensure that Mr. Örün received timely notice of this action, on

July 20, 2013, WhosHere sent a courtesy copy of the Complaint to Mr. Örün again at the email address he provided. (Wharton Decl. ¶ 4, Ex. A). Unfortunately, Mr. Örün has refused to respond to any of Plaintiff's communications since filing this action. (*Id.* ¶¶ 3-4, Ex. A). Ultimately due to Mr. Örün's failure to respond to Plaintiff's good faith attempts to resolve this matter without the need for judicial intervention, WhosHere was forced to proceed with this litigation.

Defendant is an individual residing in Turkey. Accordingly, WhosHere has attempted to serve and continues to attempt to serve Defendant with process pursuant to the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"). To that end, WhosHere translated both the Summons and Complaint into Turkish and on August 19, 2013, contacted the Turkish Minister of Justice to serve the Summons and Complaint on Defendant. (*Id.* ¶ 5, Ex. B). The address provided to the Turkish Minister of Justice was taken directly from the contact information provided on Mr. Örün's website offering the app that is the subject of the Complaint. (*Id.* ¶ 5). As the initial deadline to effect serviced approached, WhosHere had not received a response from the Turkish Minister of Justice. Therefore, on August 22, 2013, WhosHere requested an extension of time to serve the Summons and Complaint pursuant to the Hague Convention. (Dkt. No. 6). On September 4, 2013, the Court granted WhosHere's motion extending the time to serve the Summons and Complaint through February 7, 2014. (Dkt. No. 8).

On or about December 16, 2013, WhosHere received the papers from the United States Office of Foreign Litigation stating that the Turkish Minister of Justice was unable to locate Mr. Örün for purposes of effecting service pursuant to the Hague Convention. (Wharton Decl. ¶¶ 6-7, Exs. D & E). In response, WhosHere retained a Turkish investigator for the purpose of

determining an alternative address for service on Mr. Örün and intends to resubmit the Summons and Complaint for service under the Hague Convention once that is accomplished. (*Id*. ¶ 8). WhosHere has also requested a six-month (180-day) extension to allow for adequate time to resubmit the Summons and Complaint for service of process in accordance with the Hague Convention once an alternative physical address for Mr. Örün is determined. (Dkt. No. 9). Given the difficulty in effecting service through the Hague Convention under the particular circumstances set forth herein, Plaintiff also respectfully requests that the Court authorize service on Mr. Örün pursuant to Rule 4(f)(3) using the email addresses and social media connections provided to Plaintiff by Mr. Örün himself. (Ex. 1).

## LEGAL ANALYSIS

Under Rule 4(f)(3), a plaintiff may serve a foreign defendant by alternative methods, as long as the means are directed by the court and are not prohibited by international agreement. The methods of service must also comport with due process and be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Madu, Edozie & Madu, P.C. v. Socketorks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010); *see also BP Prods. N. Am., Inc. v. Dagra*, 232 F.R.D. 263, 264 (E.D. Va. 2005). Rule 4(f)(3) provides the Court and the parties with broad flexibility in obtaining service in unanticipated or exigent circumstances, particularly when a service convention does not offer an appropriate or timely means of service. *See Chanel, Inc. v. acheterchanel.com*, 2012 WL 3544844, at *3 (S.D. Fla. Aug. 16, 2012); *Richmond Techs., Inc. v. Aumtech Bus. Solutions*, 2011 WL 2607158, at *13 (N.D. Cal. July 1, 2011). Service under this subsection is neither a last resort nor extraordinary relief, but merely one of several ways to serve process on an international defendant. *BP Prods.*, 232 F.R.D. at 264. The decision whether to

authorize service under Rule 4(f)(3) is left to the sound discretion of the Court. *BP Prods. N. Am., Inc. v. Dagra*, 236 F.R.D. 270, 271 (E.D. Va. 2006) (citing *In re Int'l Telemedia Assoc., Inc.*, 245 B.R. 713, 719 (Bankr. N.D. Ga. 2000) (granting Rule 4(f)(3) motion approving service to defendant's last-known email address)).

### A. Service Through Email and Social Media Websites Is Not Prohibited by International Agreement.

The United States and Turkey are signatories to the Hague Convention.[1] Article 2 of the Hague Service Convention requires all judicial documents in civil matters to be served through a Central authority. However, Article 10 allows for service of process through means other than the signatory's Central Authority as long as the destination state does not object to those means. Hague Convention, Art. 10.[2] Turkey objects to each method of service permitted under Article 10.[3] However, many courts have held that a signatory's objections to alternative means of service are limited to those specifically described in Article 10. *See Richmond Techs.,* 2011 WL 2607158, at *12–13 ("[N]umerous courts have authorized alternative service under Rule 4(f)(3)

---

[1] The Hague Convention on Private International law maintains a list of signatories *available at http://www.hcch.net/index_en.php?act=conventions.status&cid=17*.

[2] The full text of Article 10 of the Hague Convention reads:

> Provided the State of destination does not object, the present Convention shall not interfere with
>
> *a)* the freedom to send judicial documents, by postal channels, directly to persons abroad,
>
> *b)* the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,
>
> *c)* the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

Hague Convention, Art. 10, *available at www.hcch.net/upload/conventions/txt14en.pdf*.

[3] *See* Declarations and Reservations, Hague Convention on Private International Law *available at http://www.hcch.net/index_en.php?act=authorities.details&aid=277*.

even where the Hague Convention applies.  This is true even in cases involving countries [like Turkey] that . . . have objected to the alternative forms of service permitted under Article 10 of the Hague Convention."); *SEC v. Anticevic,* 2009 WL 361739, at *4 (S.D.N.Y. Feb. 13, 2009) (permitting service by publication in signatory nations where plaintiff's attempt to effect service through central authority had failed and the recipient-nations did not "explicitly object[ ] to service by publication in [its] Declaration [ ] pursuant to the Convention,"); *In re S. African Apartheid Litig.,* 643 F. Supp. 2d 423, 434-437 (S.D.N.Y. 2009) (requiring express objection to alternative mode of service in recipient-nation's reservation as to Article X to preclude particular alternative mode).  Thus, the Court is free to order alternative means of service not explicitly stated in Article 10.  *See Gurung v. Malhotra,* 279 F.R.D. 215, 219 (S.D.N.Y. 2011).

The methods proposed by Plaintiff are not specified in Article 10.  Indeed, Article 10 does not mention service by email and courts have permitted plaintiffs to serve defendants by email in countries that object to Article 10.  *See id.* ("Where a signatory nation has objected to only those means of service listed in Article [10], a court acting under Rule 4(f)(3) remains free to order alternative means of service that are not specifically referenced in Article [10]."); *Lexmark Int'l, Inc. v. Ink Techs. Printer Supplies, LLC,* 291 F.R.D. 172, 174-75 (S.D. Ohio 2013); *Fed. Trade Comm'n v. PCCare247, Inc.,* 2013 WL 841037, at *3–4 (S.D.N.Y. Mar. 7, 2013)*; see also Facebook, Inc. v. Banana Ads, LLC,* 2012 WL 1038752, at *2 (N.D. Cal. Mar. 27, 2012) (citing cases where court held that service by email did not violate the Hague Convention). As such, a court may order service by email, where appropriate.

Likewise, Article 10 does not address service through social media websites and consequently Turkey has not objected to this form of service.  In addition, Plaintiff is unaware of any other international treaty that would preclude these methods of service.

5

### B. The Proposed Methods of Service are Reasonably Calculated, Under All the Circumstances, to Apprise Defendant of the Pendency of the Action and Afford Him an Opportunity to Present His Objections.

The proposed methods of service, particularly service through email, is not only permissible, but also are the mostly likely to provide Mr. Örün with notice of this litigation and future filings and thus comport with due process. For instance, Mr. Örün, himself, provided Plaintiff with the two email addresses (gokhan@whonear.me and gokhanorun@gmail.com) that Plaintiff proposes to use to effect service. (Ex. 1). Furthermore, Mr. Örün has a Linkedin page and Facebook page, each of which allow third parties to send messages directly to him. *See* https://www.facebook.com/OrunGokhan; http://www.linkedin.com/in/gokhanorun. It is apparent from a review of these pages that Mr. Örün actively updates them and reviews the contents. *Id.*[4] Mr. Örün, himself, noted the existence of these social networking pages and indicated they are viable ways to reach him. (Ex. 1). Thus, the proposed methods of service are reasonably calculated to apprise the Defendants of the pendency of the action and afford them an opportunity to respond.

### C. Plaintiff Has Already Attempted Service Through the Hague Convention to No Avail and the Court Should Intervene So Plaintiff Can Proceed with this Action.

In order to serve Mr. Örün with the Summons and Complaint, Plaintiff, pursuant to Federal Rules of Civil Procedure 4(f)(1), followed the procedures of the Hague Convention and submitted the Complaint and Summons to the Turkish Minister of Justice on August 19, 2013. Almost four months later, on or about December 16, 2013, Plaintiff was informed that service was unsuccessful. Though Plaintiff has taken steps to locate an alternative service address for Mr. Örün and resubmit the Summons and Complaint to the Turkish Minister of Justice, service

---

[4] As of the date of this motion, Mr. Örün last posted to his Facebook page on January 22, 2014 and subsequently responded to a commenter. *See* https://www.facebook.com/OrunGokhan. He also last updated his LinkedIn page sometime in January, 2014. *See* http://www.linkedin.com/in/gokhanorun.

through the Hague Convention is likely to take at least another four months to complete. Despite Plaintiff's diligence, service will not be accomplished by the current deadline to effect service, February 7, 2014. Authorizing service under Rule 4(3)(f) is appropriate where, as here, the Hague Convention will not permit service within the time required by the circumstances. *Richmond Techs.*, 2011 WL 2607158, at *13 (authorizing service through Rule 4(f)(3) where service through the Hague Convention would take 6-8 months). To avoid further undue delay, the Court's intervention and authorization allowing Plaintiff to serve the Defendants through alternative means is necessary to proceed expeditiously with this case.

## CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that the Court authorize service on Defendant by alternative means pursuant to Federal Rule of Civil Procedure 4(f)(3), in particular through email and social networking sites such as Facebook, and LinkedIn by entering the proposed order submitted herewith.

Respectfully submitted this 28th day of January, 2014.

/s/ *Christine H. Dupriest*
Lela M. Ames (VA Bar No. 75932)
Christine H. Dupriest (VA Bar No. 83098)
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
1200 Nineteenth Street, N.W.
Suite 500
Washington, DC  20036
Tel:  (202) 857-4438
Fax:  (202) 261-0040
Email:  cdupriest@wcsr.com

*Counsel for Plaintiff WhosHere, Inc.*