IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| WHOSHERE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 1:13-cv-00526-AJT-TRJ |
| ) | |
| GOKHAN ORUN d/b/a/ ) | |
| WhoNear; Who Near; whonear.me, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**OPINION**

Plaintiff WhosHere, Inc. moved for permission to serve process by alternative methods on defendant, Gökhan Örün, who is allegedly located in Turkey.  Dkt. No. 13.  In accordance with Fed. R. Civ. P. 4(f)(3), plaintiff proposed to serve process on defendant by email and through two social networking sites, Facebook and LinkedIn.  *Id.*

The court granted plaintiff's motion and ordered that plaintiff serve process on defendant by transmitting copies of the summons and complaint along with the order (no. 16) by: 1) email to gokhan@whonear.me; 2) email to gokhanorun@gmail.com; 3) Facebook at https://www.facebook.com/OrunGokhan; and 4) LinkedIn at http://www.linkedin/in/gokhanorum.  No. 16.  This opinion explains the basis for that order.

**I. Background and Procedural History**

On April 30, 2013, plaintiff brought this action against defendant, alleging among other things trademark infringement, unfair competition and cybersquatting.  Plaintiff is a company that offers a social proximity networking application that allows its users to create online profiles and meet people near them with similar interests.  Compl. ¶ 7.  Launched in 2008, the

WhosHere application can be operated on mobile and technology devices including smartphones and tablets. *Id.*

Defendant allegedly is an individual residing in and having his principal place of business in Turkey. Compl. ¶ 2. Defendant allegedly does business as "WhoNear" and "whonearme" which plaintiff asserts involves the unauthorized use of imitations of the WhosHere® trademark. Compl. ¶ 21. Plaintiff alleges that defendant developed a social proximity networking application and created a website, www.whonear.me, ("defendant's website") offering defendant's application. Compl. ¶¶ 23-25; Exs. D; E. Defendant is listed as the registrant and administrative contact for www.whonear.me. Compl. ¶ 24.

On multiple occasions, plaintiff notified defendant of the alleged infringing activities but he continued to use the "WhoNear" name despite requests by plaintiff to cease. Compl. ¶ 27; No. 9-2 at ¶ 3. Plaintiff sent email communications addressed to defendant in hope of engaging in discussions to resolve the issue. No. 14 at Ex. 1. On April 1, 2012, defendant responded by email to plaintiff's communications using the email address, gokhan@whonear.me. *Id.* In this email correspondence, defendant allegedly stated that "[t]his is Gökhan, I'm founder and developer of WhoNear" and further stated that he would "like to talk." *Id.* Defendant provided plaintiff with additional contact information including a second email address, gokhanorun@gmail.com, and a Skype username: gokhanorun. *Id.*

In July 2013, plaintiff sent a courtesy copy of the complaint herein to defendant via email to gokhan@whonear.me. *Id.* at ¶ 4. Defendant did not respond to this communication or any further communications. *Id*; No. 14 at 2.

Plaintiff attempted to serve process on defendant under Rule 4(f)(1) pursuant to the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial

2

Documents in Civil or Commercial Matters ("Hague Convention").  No. 9-2 at Ex. B.  On August 19, 2013, plaintiff contacted the Turkish Ministry of Justice and provided it with copies of the summons and complaint translated into Turkish[1] to be served on defendant at the address that was listed on defendant's website.  *Id*. at ¶ 5.  As the initial service deadline was approaching, on August 22, 2013, plaintiff requested an extension of time to serve the summons and complaint.  No. 6.  On September 4, 2013, the court granted plaintiff's motion and extended the time to serve process on defendant through February 7, 2014.  No. 8.

On November 19, 2013, the Turkish Ministry of Justice returned the summons and complaint to the United States Office of Foreign Litigation ("OFL") because defendant could not be located at the address provided by plaintiff.  No. 9-2 at ¶¶ 6-8; Exs. C, D.  Plaintiff received these documents back from the OFL on December 16, 2013.  *Id.* at ¶ 7.

On January 22, 2014, plaintiff filed its second motion for an extension of time to serve process on defendant in accordance with the Hague Convention.  No. 9.  On January 28, 2014, plaintiff filed the present motion proposing that plaintiff be allowed to serve process on defendant through email and social networking websites pursuant to Rule 4(f)(3).  No. 13.

## II. Legal Standard

In order to serve process on an individual in a foreign country, a federal plaintiff must comply with both constitutional due process notice requirements[2] and Rule 4(f).  In order for service to satisfy due process, the methods of service must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co*, 339 U.S. 306, 314 (1950); *see also BP Prods. N. Am., Inc. v. Dagra*, 232 F.R.D. 263, 264 (E.D.

---

[1] Defendant's April 1, 2012 correspondence with plaintiff was in English and plaintiff's email correspondences with defendant were in English.  No. 9-2 at ¶ 3; Dkt. No. 14, Ex. 1.
[2] U.S. CONST. amend. V ("No person …shall be deprived of life, liberty, or property, without due process of law…"

Va. 2005). Rule 4(f)(1)-(3) governs service of process on an individual in a foreign country and provides three mechanisms of service:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by [certain specified means outlined in the Rule] reasonably calculated to give notice . . .; or
> (3) by other means not prohibited by international agreement, as the court orders.

Recent decisions establish that courts applying Rule 4(f)(3) can order any means of service so long as it provides reasonable assurance that defendant will be notified of the lawsuit and is not prohibited by international agreement. *See Rio Props. v. Rio Int'l Interlink* 284 F.3d 1007, 1016-17 (9th Cir.2002); *BP Prods. N. Am., Inc.*, 232 F.R.D. at 265 (E.D. Va. 2005); *Liberty Media Holdings, LLC v. Sheng Gan*, No. 11-CV-02754-MSK-KMT, 2012 WL 122862 at * 2 (D. Colo. Jan. 17, 2012). Ultimately, the decision whether to order alternative service of process under Rule 4(f)(3) is within the sound discretion of the court. *Henry Teichman v. Caspian Flat Glass OJSC*, 2013 WL 1644808, at *1 (W.D. Pa. April 16, 2013); *BP Prods. N. Am., Inc.*, 236 F.R.D. at 271.

It is well-established that Rule 4(f) does not establish a hierarchy of the three mechanisms of service of process. *See United States v. Lebanese Canadian Bank*, 285 F.R.D. 262, 266 (S.D.N.Y. 2012). The Ninth Circuit in *Rio Props. v. Rio Int'l Interlink* succinctly explained that service pursuant to Rule 4(f)(3) is "neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant." 284 F.3d at 1015. Thus, Rule 4(f) does not impose an exhaustion requirement and the court can order service pursuant to Rule 4(f)(3) without requiring a plaintiff to first attempt

4

service pursuant to Rule 4(f)(1) or Rule 4(f)(2).[3]  *Id; See also MorningStar v. Dejun*, 2013 WL 502474, at *1 (C.D. Cal. Feb. 8, 2013).

In applying Rule 4(f)(3), a court may tailor the method of service to the circumstances so long as that method 1) is not prohibited by international agreement and 2) comports with constitutional notions of due process.  *See Anticevtic*, 2009 WL 361739, at * 3.  Courts therefore have flexibly applied Rule 4(f)(3) to authorize service by differing modes of electronic and online communications including email and social networking sites like Facebook.  *See, e.g.*, *PCCare247 Inc.*, 2013 WL 841037 at *3-4 (S.D.N.Y Mar. 7, 2013) (permitting service by email and Facebook); *In re Int'l Telemedia Associates, Inc.*, 245 B.R. 713, 720 (Bankr. N.D. Ga. 2000) (applying Rule 4(f)(3), to authorize service on defendant by fax and email address); *Rio Properties, Inc.*, 284 F.3d at 1016 (permitting service by email); *Chanel, Inc. v. acheterchanel.com*, 2012 WL 3544844, at *3 (S.D. Fla. Aug. 16, 2012) (authorizing service of process by email pursuant to Rule 4(f)(3)).

### III. Discussion

The court finds that service of process on defendant by email and social networking websites identified by defendant as belonging to him complies with both Rule 4(f)(3) and constitutional due process.

#### A. The Proposed Means of Service Through Email and Social Media Websites Are Not Prohibited By an International Agreement

Defendant is allegedly a resident of Turkey.  The United States and Turkey are both signatories to the Hague Convention.[4]  Article 2 of the Hague Convention requires all judicial

---

[3] While a plaintiff need not be required to demonstrate exigent or special circumstances before seeking an order pursuant to Rule 4(f)(3), still a court in its discretion may require a plaintiff to demonstrate why court intervention is necessary to effectuate service.  *See BP Prods. N. Am., Inc. v. Dagra*, 232 F.R.D. 263, 264 (E.D. Va. 2005).
[4] The Hague Convention on Private International law maintains a list of signatories available at http://www.hcch.net/index_en.php?act=conventions.status&cid=17.

documents in civil matters to be served through a Central Authority.[5] However, Article 10 permits service of process through alternative means like "postal channels" and "judicial officers" provided that the destination state does not object to those means.[6] Although Turkey has objected to the means listed in Article 10, its objection is specifically limited to the enumerated means of service in Article 10.[7] Where a signatory nation objects to the methods of service listed in Article 10, the court can order alternative methods of service not explicitly stated in Article 10. *See Richmond Techs.*, 2011 WL 2607158 at *12-13; *Garung v. Malhorta*, 279 F.R.D. 215, 219 (S.D.N.Y. 2011) ("Where a signatory nation has objected to only those means of service listed in Article[10], a court acting under Rule 4(f)(3) remains free to order alternative means of service that are not specifically referenced in Article [10])"; *Anticevtic*, 2009 WL 361739 at * 4 (permitting service by publication when recipient nations did not explicitly object to such method of service). Here, Turkey has not specifically objected to service by email or social media networking sites which are not explicitly listed as means of service under Article 10.

Several courts have permitted service of process by email and other electronic communications where the country in which the defendant resides only generally objects to Article 10. *Garung v. Malhorta*, 279 F.R.D. 215, 219 (S.D.N.Y. 2011); *F.T.C. v. PCCare247 Inc.*, 2013 WL 841037 at *3-4 (S.D.N.Y Mar. 7, 2013) (permitting service by email and Facebook); *Facebook Inc. v. Banana Ads*, LLC, 2012 WL 1038752, at *2 (N.D. Cal. Mar. 27, 2012) (referencing cases where service by email did not violate the Hague Convention).

---

[5] Hague Convention on Service Abroad of Judicial and Extrajudicial Documents art. 2, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.
[6] *Id*. at Art. 10.
[7] *See* Declarations and Reservations, Hague Convention on Private International Law available at http://www.hcch.net/index_en.php?act=authorities.details&aid=277.

Likewise, the court finds that the alternative methods proposed by plaintiff here do not violate any international agreement.

### B. The Proposed Means of Service Comport With Due Process Because They Are Reasonably Calculated Under the Circumstances To Provide Notice

The court finds that service of process through all four means of service, two email and two social networking accounts ostensibly belonging to defendant, comports with due process because it is reasonably calculated under the circumstances to provide defendant notice of this suit. Collectively, these four methods are highly likely to provide defendant notice of this litigation, because defendant himself provided plaintiff with these email contacts, and also referred plaintiff to the social networking profiles which appear to be regularly viewed and maintained by defendant.[8]  No. 14 at 6; Ex. 1.

Here, on April 1, 2012, defendant, using the email address gokhan@whonear.me, responded to plaintiff's email correspondence which was addressed to defendant at gokhan@whonear.me. *Id*. In this email, defendant stated that he was the "founder and developer of WhoNear" and stated that he would "like to talk" with plaintiff further about the matter. *Id.* In that email, defendant provided plaintiff with the alternative email address, gokhanorun@gmail.com with a proceeding note stating that "you can find me in all social network [sic] with this email address." *Id.* Plaintiff identified that defendant has Facebook and LinkedIn accounts under the name, Gokhan Orun, which contain information about defendant's involvement in the social networking and mobile technology business including WhoNear. No. 14 at 6; fn. 4. Moreover, the facts that gokhan@whonear.me contains the email host "WhoNear.me", the alleged infringing application, and his alleged social networking accounts all

---

[8] No. 14 at 6; fn. 4 (plaintiff describing that "Mr. Örün last posted to his Facebook page on January 22, 2014 and subsequently responded to a commenter. *See* https://www.facebook.com/OrunGokhan. He also last updated his LinkedIn page sometime in January 2014. *See* http://www.linkedin.com/in/gokhanorun.").

contain defendant's first and last name linking him to WhoNear strongly corroborates the assertion that these email addresses and social networking accounts belong to defendant. In addition, the content of defendant's email to plaintiff containing his social networking and email contacts strongly implies that these are his preferred methods of communication which he regularly uses.[9]

Moreover, prior to and after the filing of the lawsuit, plaintiff electronically communicated with defendant about the basis of the lawsuit and even emailed defendant a copy of the complaint. No. 9-2 at ¶¶ 3-6. In tailoring alternative methods of process pursuant to Rule 4(f)(3), courts have taken into consideration whether defendant already possessed either knowledge of suit or that he may be the subject to a suit. *BP Prods. N. Am., Inc.*, 236 F.R.D. at 272. In the case at hand, plaintiff has shown that defendant is presumably abreast of both the subject matter of the litigation and is likely already in receipt of the complaint. For these reasons, the court finds that the proposed methods of service comport with due process because they are reasonably calculated to give defendant notice of the suit. This holding finds support in the decisions of other courts discussed above.

Finally, while the court finds that plaintiff could have sought an order pursuant to Rule 4(f)(3) without first resorting to Rule 4(f)(1) or (2), the court notes that even were this not so, this plaintiff did seek unsuccessfully to effectuate service on the defendant through the Hague Convention pursuant to Rule 4(f)(1). Thus, even if Rule 4 did create a hierarchy of methods of

---

[9] Additionally, the court finds that service of process by email and social networking sites is particularly appropriate here considering that defendant is in the technology business and allegedly identifies himself as a "mobile technology enthusiast" on his LinkedIn page. *See Philip Morris v. Veles Ltd.*, 2007 WL 725412 at *3 (S.D. NY Mar. 12, 2007) (authorizing service by email and fax where "defendants conduct business extensively through their Internet website and corresponds regularly with customers via email"); *See* LinkedIn, http://www.linkedin.com/in/gokhanorun (last visited February 11, 2014).

service, a proposition that this court has rejected, this plaintiff would still be entitled to use the means of service ordered here under the circumstances presented.

## IV. Conclusion

For these reasons, the court has entered an order (no. 16) granting plaintiff's motion (no. 13) and approving service of the summons and complaint pursuant to Fed. R. Civ. P. 4(f)(3).

/s/
Thomas Rawles Jones, Jr.
United States Magistrate Judge

February 20, 2014
Alexandria, Virginia